COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Decker and AtLee
Argued at Richmond, Virginia


SARA LOGAN HOWE

v.      Record No. 0703-15-2

ALBEMARLE COUNTY DEPARTMENT
  OF SOCIAL SERVICES                                    MEMORANDUM OPINION[*]
                                                 JUDGE RICHARD Y. ATLEE, JR.
SARA LOGAN HOWE                                        FEBRUARY 16, 2016

v.      Record No. 0704-15-2

ALBEMARLE COUNTY DEPARTMENT
  OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
John J. McGrath, Jr., Judge Designate

Christopher C. Graham (Eustis & Graham, P.C., on brief), for
appellant.

Richard A. DeLoria; Stephanie Cangin, Guardian *ad litem* for the
infant child (Albemarle County Attorney's Office, on brief), for
appellee.


Sara Logan Howe ("mother") appeals orders of the Circuit Court of Albemarle County ("the

circuit court") terminating her parental rights to her child, M.H.S. ("the child"), and approving the

foster care goal of adoption.  Mother argues that the circuit court erred by denying her motions to

strike the evidence with respect to:  (1) the termination of her parental rights because there was not

clear and convincing evidence that she failed to substantially remedy the conditions that initially

necessitated foster care; and (2) the change in goal for the foster care plan because there was

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

insufficient evidence to find by a preponderance that it was in the child's best interests. For the reasons that follow, we affirm the decisions of the circuit court.

## I. BACKGROUND

The child was born in March of 2013. On July 31, 2013, the Albemarle County Department of Social Services ("the Department") removed the child from mother's care because of allegations of physical neglect and domestic violence. Cory Swisher ("father") did not live with mother and the child at the time of the removal.

The Albemarle County Juvenile and Domestic Relations District Court ("the JDR court") approved an initial foster care plan, the goal of which was for the child to return home. The Department offered mother services, including a referral for a psychological examination with Dr. Marilyn Minrath. After testing mother, Dr. Minrath diagnosed her with poly-substance abuse, major depression, an eating disorder, and a personality disorder (dependent personality with anti-social features). Dr. Minrath concluded that mother had significant thought dysfunction and a child-like dependency on her own mother and that she was not equipped to fulfill her parental responsibilities.

The Department arranged for mother to have supervised visits with the child. It also referred her to outpatient counseling and parent coaching with the Counseling Alliance of Virginia. Mother was often late for visits. Although her parental skills improved at points, such improvement was desultory and impermanent. In addition, conflict between mother and the maternal grandmother substantially disrupted supervised visits on multiple occasions, with loud verbal altercations taking place at times when they both were present, and mother complaining inappropriately, instead of focusing on the child, during individual visits.

The Department also referred mother to the Family Treatment Court program, which she began in September 2013. Early in the program, mother tested positive for benzodiazepines,

amphetamines, and marijuana. After approximately one month, she stopped coming to weekly meetings, and by mid-October, informed the coordinator that she would not continue to participate. On November 11, 2013, mother was arrested, and later convicted, for disorderly conduct. She had multiple positive drug tests between December 2013 and January 2014.

In February 2014, mother entered a dual diagnosis treatment center (addressing both her mental health and substance abuse issues) in Galax, Virginia. In March of 2014, mother was terminated from the program after having been arrested for being drunk in public on two consecutive days. She was subsequently convicted of those two crimes on April 14, 2014.

Mother's family then arranged for her to enter another treatment facility, the Farley Center in Williamsburg, Virginia, but she left the program within twenty-four hours. The Department directed mother to contact the local community services board for treatment, but mother did not do so. Mother continued to abuse alcohol and drugs.

In July 2014, mother checked into Treasure Coast Recovery, a rehabilitation center in Florida. Because she failed to inform the Department, it was unaware of her whereabouts for several months. As a result, the Department suspended her visitation with the child and filed a foster care plan with the goal of adoption. On August 1, 2014, the JDR court approved that foster care plan. On October 20, 2014, after a hearing, the JDR court terminated mother's parental rights. Mother appealed to the circuit court.[1]

On January 27-28 and March 10, 2015, the circuit court heard evidence and argument regarding the foster care plan and termination of parental rights. Father was incarcerated and did not expect to be released until June 2019, but he expressed his desire for the child to return to mother. Mother testified that her experience at Treasure Coast Recovery had a positive effect on

---

[1] The JDR court also terminated father's parental rights. Father appealed to the circuit court, which consolidated the parents' cases.

her and gave her the tools to remain sober (implying that she successfully completed treatment), but that she voluntarily returned to Virginia because she missed her child. She testified that she started seeing a psychiatrist named Dr. David Burns. On March 10, 2015, the circuit court did not approve the foster care plan with the goal of adoption and continued the petition to terminate parental rights. It ordered mother to sign releases for the Department to obtain her records from Treasure Coast Recovery and from Dr. Burns. It also ordered mother to participate in random drug and alcohol screens, attend Narcotics Anonymous or Alcoholics Anonymous meetings, wear a SCRAM[2] bracelet to monitor alcohol use, and remain drug and alcohol free.

On April 3, 2015, the Department filed a "Motion to Reconsider & Vacate Order" and a "Motion to Disapprove Foster Care Service Plan." The Department alleged that mother lied to the circuit court about her drug treatment. Records from Treasure Coast Recovery revealed that mother was discharged in September due to three positive drug screens[3] and her lack of compliance in attending treatment sessions. Although mother initially signed a release allowing the Department to speak with Dr. Burns, mother subsequently rescinded the release. Despite mother's non-cooperation, the Department presented evidence that she misrepresented the nature and frequency of her sessions with Dr. Burns. Further, mother refused to cooperate with random drug screens following the March 10, 2015 order, twice claiming she was unable to produce a urine sample, and later failing to show up for a blood test.

On April 7, 2015, the circuit court held a hearing to address the Department's motions. At that time, the circuit court offered mother another drug screening, but she failed to produce a sample. After reviewing the evidence and hearing testimony, the circuit court concluded that

---

[2] SCRAM is short for Secure Continuous Remote Alcohol Monitoring. SCRAM bracelets attach to a person's ankle and detect the presence of alcohol in sweat.

[3] Mother tested positive on multiple occasions for methamphetamines and ecstasy.

mother told "flat out lies" at the previous hearings. The circuit court disapproved the foster care plan with the goal that the child return home and ordered preparation of a new plan with the goal of adoption.

On April 16, 2015, the circuit court held a final hearing. It approved the foster care plan with the goal of adoption and terminated mother's parental rights.[4] This appeal followed.

## II. ANALYSIS

Mother argues that the circuit court erred in finding that the evidence was sufficient to change the foster care plan's goal to adoption and terminate her parental rights. In our review of this case, we view the facts in the light most favorable to the appellee, the prevailing party below. See Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005). "When reviewing a decision to terminate parental rights," this Court "presume[s] the circuit court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Id. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

The circuit court terminated mother's parental rights under Code § 16.1-283(B) and (C). Residual parental rights may be terminated under Code § 16.1-283(B) if clear and convincing

---

[4] The circuit court also terminated father's parental rights. He appealed that decision, and this Court summarily affirmed the termination. See Swisher v. Albemarle Cty. Dep't of Soc. Servs., Record No. 0755-15-2, 2015 Va. App. LEXIS 336 (Va. Ct. App. Nov. 17, 2015).

evidence established three factors: (1) that the termination is in the child's best interests, (2) the neglect and abuse suffered by the child presents a serious and substantial threat to life, health, or development, and (3) it is not reasonably likely that the conditions which resulted in the neglect or abuse can be substantially corrected so as to allow the child's safe return to the parent within a reasonable period of time. A court may terminate parental rights under Code § 16.1-283(C)(2) if it is in the best interests of the child and the parent has been "unwilling or unable within a reasonable period of time not to exceed 12 months . . . to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social . . . or other rehabilitative agencies." In determining what is in the best interests of a child, relevant factors include the age of the child, the physical and mental conditions of the child, the age of the parent, the mental and physical conditions of the parent, the existing relationship between them, the needs of the child, and the role the parent had provided in the upbringing of the child. Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

Mother has a history of significant mental health and substance abuse problems. Since the child has been in foster care, mother has failed to successfully complete any of numerous substance abuse treatment programs. She admits that "she did not fully comply" with the requirements of the permanency plans or with the March 10, 2015 court order. Mother testified that her treatment at Treasure Coast Recovery had finally changed her attitude and enabled her to remain sober. She also testified that she left voluntarily to return to see her son. In reality, she returned home not because she successfully completed treatment, but because she was discharged for failing three drug screens and failing to attend treatment sessions. Despite the significant stakes of non-compliance, mother did not provide a urine or blood sample for drug testing between March 10 and April 7, 2015. The circuit court even gave her an opportunity

during the hearing on April 7, 2015 to provide a urine sample, but she did not. For these reasons, we cannot say that the circuit court's conclusion that mother told "flat out lies" regarding her sobriety, and its corresponding decision to terminate her parental rights, were plainly wrong or without evidence to support them.

The trial court also did not err in determining that adoption is in the best interests of the child. As a preliminary matter, mother acknowledged that she did not have stable housing or employment. More importantly, ample evidence supported the circuit court's finding that, despite all the services and resources offered, mother had not remedied the circumstances that led the Department to place the child in foster care. Despite the gravity of the situation, over the course of a year, mother failed to maintain her sobriety or to treat her mental health conditions, and continued to make excuses for her behavior. At the time of the final hearing, the child had been in foster care for nearly two years, since he was four months old. The child has lived with his foster parents, who wish to adopt him, since he was less than a year old. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Accordingly, based on the totality of the circumstances, the circuit court did not err in terminating mother's parental rights and approving the goal of adoption.

III. CONCLUSION

For the foregoing reasons, we affirm the trial court's rulings.

Affirmed.